DARIN D. SMITH
United States Attorney
C. LEVI MARTIN (WY Bar #6-3781)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
Tel: 307-772-2124
christopher.martin@usdoj.gov

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
DANIEL C. LUECKE (CA Bar #326695)
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:     (202) 598-7863
Email:  daniel.luecke@usdoj.gov

*Attorneys for Respondents*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| STATE OF WYOMING and STATE OF MONTANA,<br><br>    Petitioners,<br>  v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>    Respondents,<br><br>  and<br><br>NORTHERN CHEYENNE TRIBE, *et al.*,<br><br>    Intervenor-Respondents. | Case No. 24-CV-00257-SWS (Lead Case) |

| | |
|---|---|
| NAVAJO TRANSITIONAL ENERGY COMPANY, L.L.C., and NATIONAL MINING ASSOCIATION, | |
| Petitioners, | |
| v. | |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | Case No. 24-CV-264-SWS (Joined Case) |
| Respondents, | |
| and | |
| NORTHERN  CHEYENNE TRIBE, et al., | |
| Intervenor-Respondents. | |

| | |
|---|---|
| WESTMORELAND MINING HOLDINGS, LLC, *et al.*, | |
| Petitioners, | |
| v. | |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | Case No. 25-CV-33-SWS (Joined Case) |
| Respondents, | |
| and | |
| NORTHERN CHEYNNE TRIBE, *et al.*, | |
| Intervenor-Respondents. | |

## MEMORANDUM IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS UNDER

## RULE 12(b)(1)

# TABLE OF CONTENTS

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

STANDARD OF REVIEW ............................................................................................... 5

ARGUMENT .................................................................................................................... 6

CONCLUSION.................................................................................................................. 8

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon*,
909 F.3d 329 (10th Cir. 2018) .......................................................................... 6, 7, 8

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)................................................................................................ 5

*Bruno v. Dir. of U.S. Citizenship & Immigr. Servs.*,
791 F. Supp. 3d 1249 (D. Colo. 2025)................................................................... 6

*Camfield v. City of Oklahoma City*,
248 F.3d 1214 (10th Cir. 2001) ............................................................................. 8

*Downer v. Bureau of Land Management*,
No. 20-CV-191-SWS, 2021 WL 7210048 (D. Wyo. Mar. 12, 2021)..................... 7

*E.F.W. v. St. Stephen's Mission Indian High Sch.*,
264 F.3d 1297 (10th Cir. 2001) ............................................................................. 6

*E.F.W. v. St. Stephen's Mission Indian High Sch.*,
51 F. Supp. 2d 1217 (D. Wyo. 1999)..................................................................... 6

*Jordan v. Sosa*, .............................................................................................. 7, 8
654 F.3d 1012, 1035 (10th Cir. 2011)

*Pueblo of Jemez v. United States*,
790 F.3d 1143 (10th Cir. 2015) ............................................................................. 5

*WildEarth Guardians v. Pub. Serv. Co. of Colorado*,
690 F.3d 1174 (10th Cir. 2012) ............................................................................. 6

**Statutes**

5 U.S.C. § 801(b)(2) ............................................................................................. 5, 7

5 U.S.C. §§ 801-808 ................................................................................................. 4

Pub. L. 119–21, 139 Stat. 72, H.R. 1, 119th Cong. § 50203 (2025) .................... 4, 5, 7

Pub. L. 119-48, 139 Stat. 697 (Dec. 11, 2025) ........................................................ 4

Pub. L. 119-51, 139 Stat. 700 (Dec. 11, 2025) ........................................................ 4

Pub. L. No. 119-21, 139 Stat. 700 (Dec. 11, 2025) ................................................. 4

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................. 8

Fed. R. Civ. P. 12(h)(3)............................................................................................. 5

iii

**Other Authorities**

89 Fed. Reg. 93,650 (Nov. 27, 2024)....................................................................................... 1, 2

90 Fed. Reg. 30,093 (July 8, 2025)............................................................................................. 1

90 Fed. Reg. 47,813 (Oct. 2, 2025)......................................................................................... 4, 5

90 Fed. Reg. 8237 (Jan. 20, 2025) ............................................................................................ 3

90 Fed. Reg. 8353 (Jan. 20, 2025) ............................................................................................ 3

90 Fed. Reg. 8433 (Jan. 20, 2025) ............................................................................................ 3

**INTRODUCTION**

This case arose out of the Bureau of Land Management's ("BLM") 2024 approval of two Resource Management Plan Amendments ("RMPAs") for its Buffalo Field Office in Wyoming and its Miles City Field Office in Montana. Specifically, Petitioners challenged these RMPAs on the basis that they made all BLM-administered coal unavailable for future leasing. Congress has now nullified both of the challenged RMPAs under the Congressional Review Act ("CRA"). Moreover, the One Big Beautiful Bill Act ("OBBBA") effectively invalidated the RMPAs' prohibition on future coal leasing that gave rise to this lawsuit. There is thus no longer an ongoing dispute in this case, and the Court should accordingly dismiss it as moot under Rule 12(b)(1).

**BACKGROUND**

BLM's Buffalo and Miles City Field Offices encompass approximately 4.7 and 11.7 million acres of subsurface federal coal estate, respectively, in the Powder River Basin of north-central Wyoming and eastern Montana. Under BLM's 2019 and 2021 RMPAs for these field offices, 481,000 acres and 1,214,380 acres of Federal mineral estate, respectively, were made available for further consideration for coal leasing. Notice of Intent to Amend the Resource Management Plan for the Buffalo Field Office, Wyoming, 90 Fed. Reg. 30,093, at 30,094 (July 8, 2025); Notice of Intent to Amend the Resource Management Plan for the Miles City Field Office, Montana, 90 Fed. Reg. 30,092, at 30,093 (July 8, 2025). However, on November 20, 2024, the BLM Director approved new RMPAs for the Buffalo and Miles City Field Offices that prohibited future leasing in these planning areas. Notice of Availability of the Record of Decision and Approved Resource Management Plan Amendment for the Buffalo Field Office, Wyoming, 89 Fed. Reg. 93,650 (Nov. 27, 2024); Notice of Availability of the Record of

1

Decision and Approved Resource Management Plan Amendment for the Miles City Field Office, Montana, 89 Fed. Reg. 93,650, at 93,651 (Nov. 27, 2024).

When BLM issued its decision to approve the 2024 RMPAs, BLM was in receipt of two Lease-By-Applications ("LBAs") submitted by Petitioner Navajo Transitional Energy Company, LLC and/or its predecessor ("NTEC"). The LBAs identified coal tracts adjacent to the Spring Creek Mine in Montana and the Antelope Mine in Wyoming.  NTEC owns and operates both the Spring Creek and Antelope Mines.  The RMPAs had the effect of barring BLM from issuing decisions on NTEC's LBAs or issuing any additional documents predicated on such a decision. Res.' Mot. for Vol. Remand 7–8, Dkt. 51.

In December 2024, NTEC initiated a Petition for Judicial Review in the Federal District Court for the District of Wyoming challenging the RMPAs under the Administrative Procedure Act (APA), the Mineral Leasing Act (MLA), the Federal Land Planning Policy and Management Act (FLPMA), and the Surface Mining Control and Reclamation Act (SMCRA). Case No. 24-cv-264 Pet. for Rev. ¶¶ 68–97, Dkt. 1 ("NTEC Compl."). As relief, NTEC has asked the Court to (1) Vacate the RMPAs and the Records of Decision approving them, (2) Declare the RMPAs invalid, and (3) Enjoin the Respondents from implementing the RMPAs or terminating the NTEC's LBAs. *Id.* at ¶ 98.

Also in December 2024, Petitioners State of Wyoming and State of Montana filed their own lawsuit challenging the RMPAs. Case No. 1:24-cv-00257 Pet. for Rev., Dkt. 1. They assert claims under the APA, FLPMA, the National Environmental Policy Act (NEPA), and the MLA and have asked for declaratory relief, vacatur of the RMPAs, and an injunction against their implementation. *Id.* at ¶¶ 221–84.

2

Then, in January 2025, Petitioners Westmoreland Rosebud Mining LLC, Westmoreland Mining LLC, Westmoreland Mining Holdings LLC, and Westmoreland Haystack Mining LLC (collectively "Westmoreland") filed yet another challenge to the RMPAs. Case No. 2:25-cv-00033 Pet. for Rev., Dkt. 1. Their petition alleges claims under the APA, FLPMA, the MLA, SMCRA, NEPA, BLM's regulations, the Due Process Clause of the U.S. Constitution, and the Major Questions Doctrine. *Id.* at ¶¶ 133–205. And, like the other petitioners, Westmoreland has requested declaratory relief, vacatur of the RMPAs, and an injunction against their implementation. *Id.* at ¶ 206.

On February 28, 2025, the Northern Cheyenne Tribe, Center for Biological Diversity, Diné Citizens Against Ruining Our Environment, Montana Environmental Information Center, Northern Plains Resource Council, Sierra Club, Tó Nizhóni Ání, Western Organization of Resource Councils, and WildEarth Guardians moved to intervene in all three cases. The Court subsequently granted their motions to intervene.

On January 20, 2025, President Trump issued a number of executive orders encouraging energy development, declaring a national energy emergency, and rescinding prior executive orders. E.O. 14154, 90 Fed. Reg. 8353; E.O. 14156, 90 Fed. Reg. 8433; E.O. 14148, 90 Fed. Reg. 8237. The Secretary of the Interior subsequently issued a Secretary's Order requiring BLM to review and, as appropriate, revise the RMPAs at issue in this case (among others) for consistency with the President's executive orders. U.S. Department of the Interior, *SO 3418 - Unleashing American Energy* (Feb. 3, 2025).

As a result, on May 7, 2025, Respondents moved for voluntary remand of the RMPAs in the NTEC case. Case No. 24-cv-264, Dkt. 51. In June 2025, the Court consolidated all three lawsuits challenging the RMPAs and granted Respondents' motion for voluntary remand. Case

3

No. 24-cv-264, Dkt. 55. The Court also stayed proceedings in the three lawsuits and directed Respondents to file status reports informing the Court of BLM's progress on remand. Case No. 24-cv-264, Dkt. 56.

On July 4, 2025, the President signed the OBBBA into law. Pub. L. No. 119-21. The OBBBA reflects Congress' intent to lease coal for energy production. Accordingly, Section 50203 of the OBBBA directs the Secretary of the Interior to "make available for lease known recoverable coal resources of not less than 4,000,000 additional acres on Federal land located in the 48 contiguous States and Alaska subject to the jurisdiction of the Secretary . . . ." OBBBA, Pub. L. 119–21, 139 Stat. 72, H.R. 1, 119th Cong. § 50203 (2025). And the OBBBA required the Secretary to take certain actions with respect to any qualified leasing application within 90 days, including conducting a lease sale, identifying the highest bidder whose bid meets or exceeds the fair market value, and taking the additional steps necessary to move the application toward approval. *Id.* at § 50201.

On October 2, 2025, the Secretary of the Interior published a notice making available approximately 13,103,000 acres of Federal mineral estate for coal leasing pursuant to Section 50203 of the OBBBA. Notice of land available for coal leasing, 90 Fed. Reg. 47,813 (Oct. 2, 2025). As a result of the Secretary's action, approximately 2,100,000 acres of Federal mineral estate in the Buffalo Field Office and approximately 6,700,000 acres of Federal mineral estate in the Miles City Field Office became available for coal leasing. *Id.* at 47,814.

On December 11, 2025, the President signed two Joint Resolutions providing for congressional disapproval of the 2024 RMPAs under the Congressional Review Act (CRA), 5 U.S.C. §§ 801-808. *See* Pub. L. 119-48, 139 Stat. 697 (Dec. 11, 2025); Pub. L. 119-51, 139 Stat. 700 (Dec. 11, 2025). As a result, the RMPAs have been nullified and are no longer in effect.

In addition, BLM is now prohibited from reissuing the 2024 RMPAs "in substantially the same form" or approving new RMPAs that are "substantially the same" as the 2024 RMPAs.  *See* 5 U.S.C. § 801(b)(2).

With Congress having nullified the 2024 RMPAs, the 2015 Buffalo Field Office RMP, as amended in November 2019, is now in effect for the Buffalo Planning Area. Likewise, the 2015 Miles City Field Office RMP, as amended in January 2021, is now in effect for the Miles City Planning Area. BLM-MT and BLM-WY have also completed maintenance actions maintaining their 2015 BFO and MCFO RMPs, as amended, to reflect the acreage opened by the Secretary under Section 50203 of the One Big Beautiful Bill Act. H.R. 1, 119th Cong. § 50203 (2025); Notice of land available for coal leasing, 90 Fed. Reg. 47,813 (Oct. 2, 2025).[1]

## STANDARD OF REVIEW

Rule 12(h)(3) provides that a court "must dismiss" an action "[i]f the court determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Consequently, "[t]he objection that a federal court lacks subject-matter jurisdiction" under Rule 12(b)(1) "may be raised at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500 (2006).

"A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction take[s] two forms: either a facial or a factual attack." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (internal citation omitted). "When reviewing a factual attack on subject

---

[1] *See* U.S. Dep't of the Interior, Bureau of Land Mgmt., https://eplanning.blm.gov/Documents/?id=c1174d8a-a7f2-f011-8406-001dd8008d46&spid=2ff3ea48-a8f2-f011-8407-001dd803d7d3 (last visited March 30, 2026); U.S. Dep't of the Interior, Bureau of Land Mgmt., https://eplanning.blm.gov/Documents/?id=cc473982-a7f2-f011-8407-001dd80bcf93&spid=722b9f43-a8f2-f011-8406-001dd802fdea (last visited March 30, 2026).

matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations" and may review "evidence outside the pleadings." *E.F.W. v. St. Stephen's Mission Indian High Sch.*, 51 F. Supp. 2d 1217, 1220 (D. Wyo. 1999), *aff'd.*, 264 F.3d 1297 (10th Cir. 2001) (internal citation omitted). Because "standing and mootness arguments implicate the Court's subject matter jurisdiction," they are properly reviewed under Rule 12(b)(1). *Bruno v. Dir. of U.S. Citizenship & Immigr. Servs.*, 791 F. Supp. 3d 1249, 1256 (D. Colo. 2025) (internal citation omitted).

## ARGUMENT

The Court should dismiss this case for one simple reason: the RMPAs that gave rise to this suit are no longer in effect. There is thus no risk of imminent injury to Petitioners, nor is there any meaningful relief for them to seek. "The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation." *WildEarth Guardians v. Pub. Serv. Co. of Colorado*, 690 F.3d 1174, 1182 (10th Cir. 2012). Consequently, "[w]hen the law that controls a given situation is changed, litigation under the old law generally becomes moot." *Am. Charities for Reasonable Fundraising Regul., Inc. v. O'Bannon*, 909 F.3d 329, 332 (10th Cir. 2018).

In *American Charities*, for example, the Tenth Circuit found the petitioner's claims to be moot after the law that gave rise to its lawsuit was revised such that the petitioner would "need not register or obtain a Utah permit" for fundraising. *Id.* Even though the petitioner insisted that "the registration and permitting obligations might remain" after the law's amendment, the court concluded that this did not matter "because the change in the law fundamentally altered the

6

nature of the registration and permit requirements." *Id.* Similarly, in *Downer v. Bureau of Land Management*, this Court dismissed a case as moot because "the challenged wild horse gather [was] finished, and its associated 2017 Decision Record [was] no longer operative." No. 20-CV-191-SWS, 2021 WL 7210048, at *5 (D. Wyo. Mar. 12, 2021).

This case law warrants dismissal here. In each of these consolidated cases, Petitioners' alleged injury flows from the 2024 RMPAs' prohibition on future coal leasing and their requested relief focuses squarely on declaring the RMPAs unlawful and enjoining their enforcement. *Supra* at 4–5. Those RMPAs have now been nullified under the CRA. 139 Stat. 697; 139 Stat. 700. Moreover, in the OBBBA, Congress directed BLM to open *more* land to coal leasing than was available even before the 2024 RMPAs were issued. OBBBA, Pub. L. 119–21, 139 Stat. 72, H.R. 1, 119th Cong. § 50203 (2025). And, to the extent NTEC also requests that the Court "prohibit defendants from terminating any pending lease-by application," NTEC Compl. ¶ 98, that request is tied to NTEC's allegation that the RMPAs require "terminat[ing] pending leases by application that do not qualify for valid existing rights," *id.* at ¶ 51. The nullification of the RMPAs also eliminates this threat. In short, the legal circumstances that gave rise to this case have changed drastically and eliminated the dispute between the parties.

Nor is there any possibility that one of the exceptions to mootness may apply here. The first "narrow" exception applies when the alleged wrong is "capable of repetition which will evade review." *Am. Charities*, 909 F.3d at 333. To trigger this exception, the petitioner "must show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *Id.* (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1035 (10th Cir. 2011)).

Here, there is no risk of Petitioners being subject to the same actions that they challenged because Congress has barred BLM from issuing any RMP that is "substantially the same" as the 2024 RMPAs. 5 U.S.C. § 801(b)(2). The 2024 RMPAs also were not "*necessarily* of short duration." *Am. Charities*, 909 F.3d at 334 (quoting *Jordan*, 654 F.3d at 1036) (emphasis in original). To the contrary, the duration of the RMPAs was cut short by Congress, just as the statute in *American Charities* was subsequently amended. *See id.* (exception did not apply because "the adoption of a statute" is "not necessarily too quick for resolution through litigation"). So the exception for disputes capable of repetition but evading review does not apply.

Under the second exception, "a defendant's voluntary cessation of the challenged practice would not ordinarily render the appeal moot." *Am. Charities*, 909 F.3d at 334. Here, however, BLM's cessation was not voluntary; it was imposed by Congress. Moreover, when mootness stems from a change in law, the Tenth Circuit has held that this exception is generally inapplicable unless the body that issued the challenged law has "announced [its] intention to reenact" it. *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1223 (10th Cir. 2001). BLM has announced no such intention and, as explained above, is restricted from taking such an action under the CRA. Because Petitioners' claims are moot and no exception is applicable, the Court should dismiss this case.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Petitioners' claims under Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted this 17th day of July, 2026.

8

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environmental & Natural Resources Division
U.S. Department of Justice

*/s/ Daniel C. Luecke*
DANIEL C. LUECKE
Trial Attorney, Natural Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:     (202) 598-7863
Email:  daniel.luecke@usdoj.gov

DARIN D. SMITH
United States Attorney

*/s/ C. Levi Martin*
C. Levi Martin
Assistant United States Attorney

*Counsel for Respondents*

9